U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

**MAR 2 2 2007**

ROBERT H. SHEMWELL, CLERK
BY ————— DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| ANTONIO VELAZQUEZ, ET AL. | CIVIL ACTION NO. 06-0174 |
| VERSUS | JUDGE DONALD E. WALTER |
| LANDCOAST INSULATION, INC. | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment [Doc. #27] filed on behalf of defendant, LandCoast Insulation, Inc. f/k/a IMACCO Insulation, Inc., pursuant to Federal Rule of Civil Procedure 56.[1]  Plaintiffs oppose this motion.  For the reasons assigned herein, defendant's motion is **GRANTED** and plaintiffs' federal claims are **DISMISSED WITH PREJUDICE**, while plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE** as this Court declines to exercise jurisdiction over those claims.

## STATEMENT OF THE CASE

Plaintiff, Antonio Velazquez ("Velazquez"), and his wife bring this action against LandCoast Insulation, Inc. f/k/a IMACCO Insulation, Inc. ("LandCoast") asserting retaliation claims under the False Claims Act, 31 U.S.C. § 3730(h), unlawful search and seizure claims under 42 U.S.C. § 1983 and various state law claims.  Plaintiff's claims arise out of the termination of his employment with

---

[1]Also before this Court is defendant's Motion to Strike Exhibits and Affidavit of Antonio Velazquez [Doc. #32] wherein defendant asserts that the electronic mail messages in plaintiffs' Exhibit E are unsworn and unauthenticated and that plaintiff's affidavit fails to comport with the requirements of FRCP 56(e).  Defendant's Motion to Strike [Doc. #32] is **GRANTED** to the extent that the Court considered only competent summary judgment evidence in reaching its decision with regard to defendant's Motion for Summary Judgment.

LandCoast on April 29, 2005.

Velazquez began working for LandCoast in June 2004 as Chief Financial Officer ("CFO"). Defendant's Statement of Uncontroverted Facts ("SUF"), ¶1; Deposition of Antonio Velazquez ("Velazquez depo."), pp. 34-35. As CFO, Velazquez was responsible for collecting information for preparation of the year-end audit by the company's accounting firm. Defendant's SUF, ¶2.

In January 2005, Velazquez was responsible for bidding on behalf of LandCoast on industrial scaffolding made available through a bankruptcy proceeding. Defendant's SUF, ¶3; Velazquez depo., pp. 47-49. It is undisputed that Velazquez had to retract a successful bid on the scaffolding that cost LandCoast approximately $150,000.00 to be released from the agreement to purchase (referred to by the parties as the "scaffolding fiasco"). Velazquez depo., pp. 47, 49; Affidavit of R. Michael Morton ("Morton aff."), ¶5. The parties dispute the reason for the bid retraction.[2]

On January 19, 2005, Velazquez received a letter by facsimile from an individual who discussed a multimillion dollar contract between Cyberonics, Inc. and Global Industrial Solutions, a debtor to LandCoast (the "Cyberonics letter"). Id. at ¶2; Velazquez depo., pp. 73-74; Plaintiffs' Opp., Exh. A. Velazquez asserts that at some point in 2005, the purported signatory of the Cyberonics letter, Michael F. O'Donnell ("O'Donnell"), Director of Talent Acquisition for Cyberonics, Inc., informed Velazquez that O'Donnell never authored, authorized or had any

---

[2]Defendant asserts that Velazquez failed to accurately or adequately confirm LandCoast's financial ability to complete the purchase as bid. Morton aff., ¶5. Plaintiff asserts that until the time when the bid was made, he confirmed and re-confirmed his authority to bid, the amount authorized and the company's desire to obtain the scaffolding. Velazquez depo., pp. 47-50, 53-55. According to plaintiff, the Chief Executive Officer ("CEO") of LandCoast, R. Michael Morton ("Morton"), changed his mind about the scaffolding after the agreement to purchase was made and blamed Velazquez for the loss incurred as a result of the bid retraction. Id.

knowledge of the Cyberonics letter.[3]

In late February or early March of 2005, Velazquez was no longer acting as CFO.[4]  The CFO duties for LandCoast were assumed by Jeff Hopkin ("Hopkin") who became Velazquez's direct supervisor.  Morton aff., ¶6; Velazquez depo., pp. 50-51.  Velazquez retained some of his previous accounting duties but took on other non-accounting tasks, such as serving as a liason between LandCoast and its outside computer technology consultants.  Id.

Plaintiff asserts in his Complaint that during the week prior to his termination, Velazquez "confronted R. Michael Morton and Jeff Hopkins {sic} about the fraudulent substance of the [Cyberonics letter], the forgery, and his objection to their intent to use the document to inflate the financial position of LandCoast."  Complaint, ¶30.  Velazquez asserts that he told Hopkin and Morton that he would not be a party to any illegal activity, and that Velazquez believed it was his duty to inform Whitney Bank, as well as the shareholders of LandCoast of LandCoast's intent to misrepresent the company's financial position and viability of debts.  Id. at ¶¶31, 32.  Hopkin and Morton deny that Velazquez ever brought the Cyberonics letter to their attention, or that they knew Velazquez believed LandCoast had committed any illegal act of any kind, prior to Velazquez's termination.  Morton aff., ¶11; Hopkin aff., ¶9.

---

[3]Plaintiff attaches to his Opposition, and marks as Exhibit B O'Donnell's affidavit.  In his affidavit, O'Donnell references "the correspondence attached hereto, dated January 19, 2005 (hereinafter the 'Correspondence')" that Velazquez sought to confirm had been drafted, authorized and executed with O'Donnell's knowledge.  However, there is no correspondence attached to plaintiff's Exhibit B, O'Donnell's affidavit.  The Court assumes, solely for purposes of this Ruling, that the Correspondence referred to in O'Donnell's affidavit is the Cyberonics letter.

[4]Defendant asserts that Velazquez was removed from the CFO position while plaintiff asserts that it was a mutual decision between him and his superiors.  Morton Aff., ¶6; Velazquez depo., pp. 47, 49-50, 53.

On the morning of April 29, 2005, Hopkin contacted Velazquez by telephone and told Velazquez that a decision had been made to terminate his employment. Complaint, ¶34; Velazquez depo., pp. 97, 102; Affidavit of Jeff Hopkin ("Hopkin aff."), ¶6. Hopkin also asked Velazquez to return any company property. Velazquez depo., p. 98. In the afternoon of April 29, Hopkin met with Velazquez at the LandCoast office where he turned over a laptop computer which Hopkin believed to be the only company property held by Velazquez. Id. at pp. 99-100; Hopkin aff., ¶6. Hopkin provided Velazquez with his final paycheck and his official separation notice. Id. Velazquez was told that his termination would be classified as a "reduction in force" so he could collect unemployment. Velazquez depo., pp. 100; Hopkin aff., ¶6.

After 10:00 p.m. on April 29, 2005, Velazquez sent two e-mail messages with financial statements attached, to Eric Marter ("Marter"), LandCoast's banker at Whitney Bank. Velazquez depo., pp. 160-161. Marter, in turn, forwarded those e-mail messages to Hopkin which he received on Monday, May 2, 2005. Hopkin aff., ¶13. In his affidavit, Hopkin stated that the message attachments were a Jobs-In-Progress spreadsheet report for LandCoast and a modified version of the same spreadsheet. Id.

On Monday, May 2, 2005, Velazquez wrote a letter to LandCoast shareholder, the Honorable Eugene Davis, to convey Velazquez's belief that the Cyberonics letter was a forgery and had been used to perpetrate a fraud. Velazquez depo., pp. 104-105; Deposition of the Honorable Eugene Davis ("Judge Davis depo."), pp. 11-12, with Exh. P-1. The letter stated, in pertinent part, that:

> Enclosed, please find the attached fraudulent document. I was fired last Friday from Land Coast because I wanted to resolve some serious integrity issues. Michael [Morton] and Jeff [Hopkin] fired me immediately due to my wanting to come forward. It must be brought to the board's attention, of which you are a part.

4

This exhibit shows a letter written by Michael O'Donnell of Cyberonics . . . . The importance of this letter is that it negates an allowance or "write-off" for Global Industrial Solutions on Land Coast's books. Global Industrial Solutions owed Land Coast over 222k dollars at Land Coast's fiscal year ending July 31, 2004. Because Global did not appear to be a viable business capable of paying back the loan, it should have been written off. This letter prevented the write-off to occur.

. . . This proposed business has not occurred and will most likely result in an additional write-off this year. Global is draining Land Coast's resources, which is not being reported to shareholders, to my knowledge.

Furthermore, this bogus document was presented (by me) to the auditors prior to my knowledge that it was, indeed, fabricated. I am standing firm and doing what is legally and morally right.

Id. This letter, or one similar thereto, was also sent to LandCoast's accountant. Velazquez depo., p. 105.

Based on the April 29 e-mail messages to Marter and other problems with LandCoast's computer system, LandCoast became concerned that Velazquez had retained company property, including financial data, following his termination. Hopkin aff., ¶¶ 12-15. Hopkin reported his concerns to the Iberia Parish Sheriff's Office ("IPSO"). Id. at ¶15. A search warrant based on the affidavit of IPSO Detective Donnie Lasher, was issued "in good faith based on the false representations made by Land Coast" by Judge Gerald Wattigny on May 16, 2005. Complaint, ¶45, Exh. C. The warrant called for a search of Velazquez's residence for evidence of computer tampering, offenses against intellectual property, theft and offenses against electronic mail services provider. Id. The search warrant was executed on the day it was issued. Complaint, Exh. D. Eleven items of computer equipment, computer disks and documents were taken by Iberia Parish law enforcement officers. Id. Folders and disks seized referenced LandCoast. Id. Velazquez was not at home when the search was conducted, and no representative of LandCoast was present at the time

of the search.  Velazquez depo., pp. 119, 121; Defendants' SUF, ¶11.  No charges have been filed against Velazquez.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party.  Id.

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999).  The moving party is not required to negate the elements of the non-moving party's case. Lawrence, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584-88, 106 S.Ct. 1348, 1355-56 (1986).  The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996)

6

(citations omitted).  This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence.  Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  In the absence of any proof, the court will not assume the non-moving party could or would prove the necessary facts.  Id.

Pursuant to Local Rule 56.1, the moving party shall file a Statement of Uncontested Facts as to which it contends there is no genuine issue to be tried.  Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried."  All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for the purposes of the motion, unless specifically denied."  Local Rule 56.2.

## LAW AND ANALYSIS

**I.      Retaliation Claims Under the False Claims Act.**

Plaintiff asserts that his employment was terminated in retaliation for questioning the alleged fraudulent activity of LandCoast.  LandCoast asserts that Velazquez has failed to show that he engaged in a protected activity as required for a successful retaliation action under the False Claims Act, 31 U.S.C. § 3730(h) ("FCA").  This Court agrees.

The FCA authorizes a whistle blower action by a former employee against a private employer:

> Any employee who is discharged . . . or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. . . .

31 U.S.C. § 3730(h).  To prevail on an FCA retaliation claim, a plaintiff must prove that (1) he

engaged in behavior protected by the FCA; (2) his employer knew of his protected activity; and (3) his employer retaliated against him because of his protected activity. United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 235 (1st Cir. 2004).

Section 3730(h) only protects employees who have acted "in furtherance of an action" under the FCA. United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1269 (9th Cir. 1996). Although awareness of the FCA is not required, the plaintiff must be investigating matters that are calculated, or reasonably could lead to a viable FCA action. Id. For an FCA claim to be viable, a prima facie case must be made that (1) the employer presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the employer knew the claim was false or fraudulent. Young-Montenay, Inc. v. United States, 15 F.3d 1040, 1043 (Fed. Cir. 1994).

The purpose of the FCA is to discourage fraud against the government, and the whistle blower provision is intended to encourage those with knowledge of fraud to come forward. Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir. 1994). The FCA is only intended to cover instances of fraud "that might result in financial loss to the Government." United States v. Neifert-White Co., 390 U.S. 228, 233, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968). The FCA attaches liability not to underlying fraudulent activity, but to the "claim for payment" from the Government. United States v. Rivera, 55 F.3d 703, 709 (1st Cir. 1995).

As stated above, LandCoast asserts that plaintiff has failed to show that he engaged in protected activity under the FCA. In other words, plaintiff has failed to show that he took lawful acts in furtherance of a potentially false claim for payment made by Land Coast to an agent of the United States, by investigating, initiating, testifying for or assisting in an FCA action against LandCoast.

8

Initially, plaintiff seemed to rely upon the Cyberonics letter as the false or fraudulent "claim" by LandCoast that Velazquez sought to make public. There is no evidence that the Cyberonics letter, even assuming it is a forgery, was intended to be presented to a Government agent. According to plaintiff's allegations, LandCoast planned to use the letter to falsely inflate its financial position to its auditors and to Whitney Bank to maintain LandCoast multimillion dollar line of credit with Whitney Bank. Plaintiffs have not alleged that either LandCoast's auditors or Whitney Bank is in any way a Government agent. Taking plaintiffs' allegations as true, Velazquez's calling attention to the Cyberonics letter could not, as a matter of law, be considered an act in furtherance of an FCA action against LandCoast.

In opposing defendant's motion, plaintiffs generally assert that LandCoast is a federal government contractor. <u>See</u> Plaintiff's Opp., pp. 6-7. Plaintiff makes no allegation that LandCoast presented any false or fraudulent claims to a government agent with respect to the government contracts referenced in plaintiff's Opposition. Further, plaintiffs do not allege that he investigated, initiated, testified for or assisted in any FCA action related to those government contracts.

Plaintiff mentions the Cyberonics letter in his opposition solely with regard to plaintiff's purported reporting of LandCoast's "illegal" activity to a "federal agency." In particular, plaintiff asserts that he reported LandCoast's fraudulent activity to Judge Davis, "a United States Appeals Court Judge and a member of one of the largest federal agencies." Plaintiff's Opp., p. 8. First, plaintiff did not write Judge Davis concerning the Cyberonics letter until May 2, 2005, **after** Velazquez's termination on April 29, 2005. Therefore, the May 2-letter is irrelevant as to the cause of plaintiff's termination. Second, even if the letter to Judge Davis had been written prior to Velazquez's termination, it is undisputed that Velazquez wrote Judge Davis solely in his capacity

9

as a shareholder of LandCoast. See Velazquez depo., p. 105.

Several district courts have held that §3730(h) protects internal whistle blowers, i.e., employees who report their concerns to their superiors.  See e.g., Clemes v. Del Norte County Unified Sch. Dist., 843 F.Supp. 583, 595-96 (N.D.Cal.1994); United States ex rel. Kent v. Aiello, 836 F.Supp. 720, 723-24 (E.D.Cal.1993); Neal v. Honeywell, Inc., 826 F.Supp. 266, 269-73 (N.D.Ill.1993).  In each of those cases, however, the employee told the employer that she was concerned about the company defrauding the government.  Although it is disputed whether plaintiff expressed his concerns regarding the Cyberonics letter to Hopkin and Morton, plaintiff fails to allege that he was concerned about Cyberonics defrauding the government.  Thus, assuming for purposes of this ruling that Velazquez reported his concerns to his superiors, the concerns alleged are not covered by the FCA retaliation provision.

There is no evidence that Velazquez reported any allegedly false or fraudulent claim for payment by LandCoast to a federal agency or internally reported any concerns about LandCoast defrauding the Government as required under the FCA.  It is clear to this Court that plaintiff has failed to establish a prima facie case of retaliation under the FCA.  Accordingly, plaintiff's FCA retaliation claim must be dismissed.

## II.     §1983 Claims.

Plaintiffs assert that their Constitutional rights were violated on May 16, 2005, when IPSO law enforcement officers searched the Velazquez residence pursuant to a warrant. LandCoast asserts that plaintiffs have failed to show that LandCoast is a state actor under 42 U.S.C. § 1983.

As a threshold matter, for a plaintiff to state a viable claim under § 1983 against any private defendant, the conduct of the private defendant that forms the basis of the claimed constitutional

deprivation must constitute state action under color of law.  Morris v. Dillard Dept. Stores, Inc., 277

F.3d 743, 747-48 (5th Cir. 2001), citing Lugar v. Edmonson Oil Co., Inc., 457 U.S. 922, 928-32, 102

S.Ct. 2744, 73 L.Ed.2d 482 (1982).  The Supreme Court has reiterated that the focus of the inquiry

into whether a private actor can be subjected to constitutional liability is whether "such a close nexus

between the State and the challenged action" exists "that seemingly private behavior may be fairly

treated as that of the State itself."  Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc.,

531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (internal quotation omitted).

Under the two-part test for establishing state action enunciated in Lugar, supra, a plaintiff

must show that (1) "a person for whom the State is responsible" caused the constitutional

deprivation, and (2) the private party is a "joint participant" with the state official in the offending

enterprise.  Id. at 931, 937, 102 S.Ct. 2744; see also Ballard v. Wall, 413 F.3d 510, 519 (5th Cir.

2005).  In other words, the plaintiff must show that the parties "reached an understanding" to deny

the plaintiff his rights.  Addickes v. H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26

L.Ed.2d 142 (1970).

In Morris, supra, the Fifth Circuit addressed the liability of a private defendant under §1983

when an off-duty police officer working as a security guard for a private employer detains, searches

or arrests a customer of his private employer after another employee reports suspicious activity.  In

that case, Morris filed a §1983 action after she was questioned and eventually "booked" for

shoplifting wherein she asserted, inter alia, claims of false arrest and unlawful search and seizure.

The Morris Court determined that it would "not subject a merchant to § 1983 liability unless an

officer . . . failed to perform [an] independent investigation, and that evidence of a proper

investigation may include such indicators as an officer's interview of an employee, independent

11

observation of a suspect, and the officer writing his own report." 277 F.3d at 750.

According to plaintiffs, Hopkin contacted the IPSO and specified the criminal offenses with which to charge Velazquez. Plaintiffs' Opp., p. 11. Plaintiffs speculate that the IPSO then acted on that phone call by obtaining a search warrant without conducting an independent investigation. Plaintiffs have provided the Court no evidence to prove, or raise a genuine issue of material fact as to, their conspiracy theory that presumable LandCoast and the IPSO "reached an understanding" to deny Velazquez his rights. Without such evidence, plaintiffs cannot defeat summary judgment. See Little, 37 F.3d at 1075.

## III.   State Law Claims.

The parties have not addressed the merits of plaintiffs' state law claims. Rather, defendant asks this Court to refrain from exercising pendant jurisdiction. Finding it appropriate to defer these claims to the state courts, this Court declines to exercise jurisdiction over plaintiffs' remaining state law claims.

## CONCLUSION

For the reasons stated above, defendant's motion is **GRANTED**, and plaintiffs' federal claims are hereby **DISMISSED WITH PREJUDICE**, and their state law claims are **DISMISSED WITHOUT PREJUDICE** as this Court declines to exercise jurisdiction over those claims.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

12